FILED
12/26/2018
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 25, 2018 Session

## STATE OF TENNESSEE v. JASON D. KUBELICK

**Appeal from the Circuit Court for Rhea County**
**No. 2016-CR-32          Justin C. Angel, Judge**

_____

### No. E2018-00408-CCA-R3-CD

_____

The Defendant, Jason D. Kubelick, pleaded guilty to aggravated sexual battery. By agreement, the Defendant's sentence was four years with six years on the sex offender registry with the manner of service to be determined by the trial court. The trial court ordered the Defendant to serve his four-year sentence in confinement. On appeal, the Defendant contends that the trial court erred when it denied him judicial diversion and imposed a sentence of confinement. After a thorough review of the record and applicable law, we affirm the trial court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR. and ROBERT L. HOLLOWAY, JR., JJ., joined.

Randall E. Reagan, Knoxville, Tennessee, for the appellant, Jason D. Kubelick.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; James Michael Taylor, District Attorney General; and David L. Shinn, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### I. Background and Facts

In 2016, the Defendant was indicted by a Rhea County grand jury with four counts of assault and two counts of aggravated sexual battery. Later in 2016, the Defendant pleaded guilty to one count of aggravated sexual battery. By agreement, the trial court imposed an "out of range" sentence of four years for the Class E felony aggravated sexual battery conviction, with six years on the sex offender registry. The trial court advised the

Defendant that, in accordance with the parties' agreement, it would determine the manner of service of his sentence. The four counts of assault were dismissed.

The State recited the following facts as the basis for the acceptance of the Defendant's guilty pleas:

Your Honor, if the State would have gone to trial, the primary witnesses called in this matter would be . . . individual[s] by the name of [W.C.], [C.B.], [M.B.], [K.B.], and Rocky Potter, an investigator with the Rhea County Sherriff's Department.

. . . .

A few years ago, [W.C.] befriended the [D]efendant . . . [and] the [D]efendant became fairly close with her [young] children. [W.C.] would testify over the years [the Defendant] actually probably developed a very close relationship with her daughter, [K.B.]. In 2015, [K.B.] was eight years old. [W.C.] had another daughter, [M.B.], who was [15 years old] in 2015. . . .

[W.C.] would testify that she also knew the [D]efendant and the [D]efendant had sort of befriended her young daughter . . . .

. . . .

The [D]efendant was interviewed by Rocky Potter in November of 2015, the [D]efendant made a written statement, Your Honor, which would be introduced, where the[D]efendant admitted that on several occasions he did kiss [K.B.] on the mouth, and during those kisses he inserted his tongue in her mouth. He . . . stated that those kisses were done while they were basically role playing . . . .

[The Defendant] stated also that on occasions that he would practice cheerleading with [K.B.] and he would . . . touch [K.B.] on her buttocks and on her breasts during those times they would play cheerleading.

[K.B.] would testify, Your Honor, that on several occasions the [D]efendant kissed her on her mouth during the summer and fall of 2015, and inserted his tongue in her mouth. She would testify that on . . . at least two occasions, the [D]efendant touched her on her vaginal area outside her clothing, and on her chest, around her breasts on the outside of her clothing.

. . . .

. . . .

[K.B.] would continue to testify there were other occasions when the [D]efendant would touch her around her vaginal area and her breasts . . . .

[M.B.], the sister who's now 18, she was about 15 at the time, . . . in the summer of 2015, she would testify that . . . she witnessed the [D]efendant touch [K.B.]'s inner thigh and close to her vaginal area, and she advised the [D]efendant that he shouldn't be touching her sister in those places.

The trial court subsequently held a sentencing hearing, during which the following evidence was presented: Detective Rocky Potter testified that he was employed by the Rhea County Sheriff's Department. Detective Potter described the Defendant's case as a "classic case" of a sexual predator "grooming" a child victim. He stated that the Defendant showed interest in the victim's family, where there was not a father figure present, and made himself available to babysit and transport the victim and the other children in the family. Detective Potter stated that the "role playing" described in the plea colloquy involved the Defendant's dressing up in costumes to help play out the victim's childish fantasies such as those in fairy tales or movies.

Philip Hodge testified that he was the Defendant's step-father and had known the Defendant for twenty-nine years. He testified that the Defendant lived alone with no children present in the home. Mr. Hodge stated that he saw the Defendant at least once per day. The Defendant had been a member of the local volunteer fire department prior to being placed on a leave of absence pending his charges. Mr. Hodge stated that the Defendant was well-liked at the fire department and a valuable member. Mr. Hodge stated that the Defendant had not violated any conditions of his release and that Mr. Hodge would report him if he did.

On cross-examination, Mr. Hodge agreed that the Defendant had minor-aged nieces and nephews who lived close to him. All the children "loved" the Defendant. Mr. Hodge stated he disagreed with the "pedophile" designation that the Defendant had been given in a psychosexual report. He agreed that the Defendant was forty-two years old at the time and that it was inappropriate for him to kiss an eight-year-old girl. Mr. Hodge agreed that the Defendant's release conditions prohibited his presence around minor children, including those to whom he was related. Mr. Hodge agreed that the Defendant had in fact been around minor children in his family while on release without the presence of an adult.

The pre-sentence report was admitted into the record. It included the Defendant's

3

statement admitting that he had kissed K.B. on the mouth and inserted his tongue into her mouth. He also admitted touching her breasts and backside. The Defendant stated that he should have told K.B.'s mother about the conduct to "let her know how her child was acting. I thought I was handling it, but evidently made the wrong choices." Also in the pre-sentence report were K.B.'s mother's statements that K.B. was scared to go out in public because she was afraid of seeing the Defendant who had tried to intimidate them. K.B.'s mother stated that K.B. had nightmares and emotional outbursts and had to undergo outpatient therapy at home and at school. She also reported that the Defendant was spotted in the park next to K.B.'s school in violation of court orders. K.B.'s mother reported significant changes to their family life, her job, K.B.'s schooling, and other parts of their lifestyle.

Also in the pre-sentence report was a "psychosexual risk evaluation" performed on the Defendant at the Alternative Counseling Center. The report stated the following:

> I believe that [the Defendant] is at a high risk of dangerousness to the community. His testing suggests that he is likely a pedophile and is sufficiently aware to actually want to be put into an environment where children are not present, i.e., prison. It is recommend[ed] that [the Defendant] be incarcerated and that, when he is released, he be placed on probation for sex offenders including strict monitoring . . . .

The trial court stated that it was considering the evidence presented at the plea hearing and at the sentencing hearing, the pre-sentence report, the psychosexual evaluation, the principles of sentencing, and the parties' arguments. The trial court then addressed the Defendant's request for judicial diversion or other form of an alternative sentence. Addressing judicial diversion, the trial court stated that it was considering the common law factors required by *State v. Electroplating, Inc.*, 990 S.W.2d 211 (Tenn. Crim. App. 1998) and *State v. Parker*, 932 S.W.2d 945 (Tenn. Crim. App. 1996):

> I will start with the accused's amenability to correction. . . . . I see a huge void in [the Defendant's] understanding of [his] behavior in this case, and [his] understanding of what [he's] done, and if [he] can't understand the gravity of this behavior, then [he's] not going to be able to correct it in the future. I have seen nothing that shows me [he] has the amenability to be corrected, and I will go through that further in a moment.
>
> The circumstances of the offense are frightening, and they do shock the Court. This is not a one-time thing. [The Defendant] admitted what [he] did to this little girl, she was eight at the time, [he] admitted what [he] did to her over several months, [he] admitted to it. That's been

4

uncontroverted. It's been stated, [the Defendant] admit[s] to . . . role playing with her, acting like she's a damsel in distress and [he's] the guy that rescues her, [he's] the hero and [he] give[s] her a kiss and puts [his] tongue in her mouth, because that's what she would do if she was an adult. Well, she wasn't an adult, she was [an] eight-year-old girl, [the Defendant was] 40 roughly. [He] played cheerleading with her and then touch her breasts and her back side, and this went on and on for months. And I agree with the statement of Mr. Potter that grooming took place here, and when I see cases like this -- unfortunately, this is not the first time I've seen this, I've seen it a lot -- the grooming is some of the most disturbing behavior, because it's like setting the table for what you're going to do, and it takes a lot of premeditation, and intent, and thought, and all that came together for [the Defendant], and [he] did all that and [he] gained the trust, and then [he] violated that trust numerous times over several months.

So the circumstances of the offense are weighing very heavily in this case in my decision whether or not to grant [the Defendant] diversion, and they're weighing against [him].

The trial court stated that the Defendant's absence of a criminal record weighed in his favor. Addressing the deterrence value factor, the trial court stated that it was "extremely important" to show the community that this type of behavior will not be tolerated and that this factor weighed heavily against the Defendant's request. The trial court addressed the Defendant's attitude:

[The Defendant] hasn't testified and he doesn't have to testify, he has the right to remain silent, so all I can go on are the statements that are made in the pre-sentence report and so forth, and it shows a poor attitude. It shows [the Defendant] blaming the eight-year-old girl for this. Maybe not all of it, but some of it, and she's not to blame for any of it, and yet he still casts blame on her, and asked if he would do anything different, he would have told the mom how the daughter -- how her daughter was behaving. That is . . . not the proper attitude to have in this case.

The trial court addressed the Defendant's behavior since his arrest and stated that it was alarming that the Defendant had been around children. Finally, the trial court stated that it was considering:

the likelihood that judicial diversion will serve the ends of justice and the best interest of both the public and the accused. I don't think it will. I don't think it will. I think it'll do the exact opposite. It will excuse this

5

type of behavior, and send a bad message to the community about what we will tolerate from our 40-year-old guys running around the community.

The trial court then considered enhancement and mitigating factors. The trial court stated that mitigating factor (1) applied, the Defendant's conduct did not cause serious bodily injury. The trial court applied enhancement factor (4), that the victim was particularly vulnerable given her age, in consideration of the victim's age and family situation where no father was present. The trial court addressed factor (14), that the Defendant abused a position of private trust that facilitated the commission of the offense. In support of application of factor (14), the trial court stated: "He was watching the child who was placed in control, and was suppose[d] to protect the child, and keep the child safe, and he violated that trust." *See* T.C.A. § 40-35-114(1), (4), (14) (2014).

The trial court then addressed the appropriateness of probation as an alternative sentence in this case. The trial court stated:

> The facts and circumstances surrounding the offense and the nature and circumstances of the criminal conduct involved. I've already talked about this, but I'll talk about it again. The acts committed by the Defendant that he admitted that he committed against this eight-year-old girl were disgusting, and they're troubling and they're sick, and they should never happen to anyone, especially a child. So that factor weighs heavily against [the Defendant.]

The trial court found that while the Defendant's lack of criminal history weighed in his favor, the fact that these offenses happened continually over a period of time, and later that the Defendant blamed the victim, weighed against a granting of probation. The trial court stated that the Defendant "might" be rehabilitated but that, based on the psychosexual evaluation, the trial court deemed the Defendant to be a risk to society for reoffending and as a potential pedophile. The trial court went on to state that an alternative sentence would depreciate the seriousness of the offense and that confinement was necessary to provide an effective deterrent. Accordingly, the trial court denied the Defendant's request for judicial diversion and ordered the Defendant to serve his sentence in confinement. It is from this judgment that the Defendant now appeals.

## II. Analysis
### A. Denial of Judicial Diversion

The Defendant argues on appeal that the trial court erred when it denied his application for judicial diversion pursuant to Tennessee Code Annotated section 40-35-313. He contends that the trial court abused its discretion because he is a good

6

candidate for rehabilitation and a low risk to reoffend. He argues that the psychosexual evaluation was inconsistent and unsupported by data. He contends that the trial court abused its discretion when it weighed the report so heavily against him. He further contends that the trial court erroneously applied several factors. The State responds that the trial court properly took into account the required factors when considering judicial diversion and that its decision not to grant the same was presumptively reasonable. We agree with the State.

When a defendant is eligible for judicial diversion, a judge has the discretion to defer proceedings without entering a judgment of guilty. T.C.A. § 40-35-313(a)(1)(A) (2014). The statute states that a trial court may grant judicial diversion in appropriate cases. *Id.* Following a grant of judicial diversion, the defendant is on probation but is not considered a convicted felon. *Id.* To be eligible for judicial diversion, a defendant must be a "qualified defendant" as defined by the Tennessee Code section governing judicial diversion:

> (B)(i) As used in this subsection (a), "qualified defendant" means a defendant who
>
> (a) Is found guilty of or pleads guilty or nolo contendere to the offense for which deferral of further proceedings is sought;
>
> (b) Is not seeking deferral of further proceedings for a sexual offense,[1] a violation of § 71-6-117 or § 71-6-119 or a Class A or Class B felony; and
>
> (c) Has not previously been convicted of a felony or a Class A misdemeanor.

T.C.A. § 40-35-313(a)(1)(B)(i). Eligibility does not automatically entitle the defendant to judicial diversion. *State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

Once a defendant is deemed eligible for judicial diversion, the trial court must consider several factors when deciding whether to grant judicial diversion. Due to the similarities between pre-trial diversion, which is administered by the district attorney general, and judicial diversion, courts draw heavily from pre-trial diversion law and examine the same factors:

---

[1]Sexual battery is not included as a "sexual offense" for the purposes of eligibility for judicial diversion. T.C.A. § 40-35-313(a)(1)(B)(ii).

7

[A court] should consider the defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*State v. Cutshaw*, 967 S.W.2d 332, 344 (Tenn. Crim. App. 1997).

When the trial court "specifically identifies the relevant factors and places on the record its reasons for granting or denying judicial diversion," this Court will "apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *State v. King*, 432 S.W.3d 316, 327 (Tenn. 2014). Our Supreme Court has stated:

Although the trial court is not required to recite all of the *Parker* [932 S.W.2d 945 (Tenn. Crim. App. 1996)] and *Electroplating* [990 S.W.2d 211 (Tenn. Crim. App. 1998)] factors when justifying its decision on the record in order to obtain the presumption of reasonableness, the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors.

*Id.* Failure to consider the common law factors results in loss of the presumption of reasonableness, and this Court is required to conduct a *de novo* review or remand to the trial court for reconsideration. *Id.*

The record in this case demonstrates that the trial court considered the *Parker* and *Electroplating* factors and identified those specifically applicable to this case. The trial court considered the seriousness of the Defendant's actions and the position of trust he was in when he committed the offense. The trial court considered the Defendant's failure to take full accountability for his actions, somewhat blaming the victim, and his actions during his release when he was in violation of his conditions of release by being around children. The trial court considered the psychosexual evaluation, which stated that the Defendant was at a high risk for reoffending, something upon which the trial court placed great weight. The trial court noted several factors, particularly the Defendant's lack of criminal history, which weighed in the Defendant's favor. In considering all the factors, the trial court concluded that the Defendant's crime and his risk to the community

8

outweighed the factors favoring the grant of judicial diversion.

Our review of the record reveals that there is substantial evidence to support the trial court's decision. The Defendant befriended the victim's family and, once in a position of trust, was placed in charge of babysitting the eight-year-old victim, during which time he kissed her in a manner inappropriate for a child and touched other private parts of her body. He attributed his actions to role playing and then stated he should have made the victim's mother aware of the victim's inappropriate behavior. The Defendant's misuse of his position of trust impacted the victim and her family greatly, as evidenced by her mother's statements in the pre-sentence report. The victim suffered behavioral and psychological side effects as a result of the Defendant's actions and his behavior immediately following. The trial court's decision largely was based on the seriousness of the offenses and its impact on the victim. Based upon this evidence, we conclude that the trial court did not abuse its discretion when it denied the Defendant judicial diversion. We reiterate that the trial court was not required to recite its consideration of each factor relevant to judicial diversion but only those it found relevant. *See King*, 432 S.W.3d at 327. The Defendant is not entitled to relief.

### B. Sentence of Confinement

The Defendant also argues that the trial court erred in imposing a sentence of confinement and that the same errors complained of in the trial court's decision to deny judicial diversion are applicable here. The State responds that the trial court properly exercised its discretion when it ordered that the Defendant's sentence be served in confinement based on the seriousness of the offenses and their effect on the victim. We agree with the State.

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). In the context of sentencing, as long as the trial court places the sentence within the appropriate range and properly applies the purposes and principles of the Sentencing Act, this Court must presume the sentence to be reasonable. *Bise*, 380 S.W.3d at 704-07. As the *Bise* Court stated, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is

otherwise in compliance with the purposes and principles listed by statute." *Id.* at 708.

Our Supreme Court extended the *Bise* standard to appellate review of the manner of service of the sentence. The Court explicitly held that "the abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). We are also to recognize that the defendant bears "the burden of demonstrating that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2012); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2014).

With regard to alternative sentencing, Tennessee Code Annotated section 40-35-102(5) (2014) provides as follows:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration.

A defendant who does not fall within this class of offenders, "and who is an especially mitigated offender or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6). Additionally, we note that a trial court is "not bound" by the advisory sentencing guidelines; rather, it "shall consider" them. T.C.A. § 40-35-102(6).

Even if a defendant is a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), a trial court may deny an alternative sentence because:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

T.C.A. § 40-35-103.

As we previously explained, there was substantial evidence to support the trial court's findings. The trial court stated that confinement was necessary to avoid depreciating the seriousness of the offense. The evidence was that the middle aged Defendant had kissed and fondled the eight-year-old victim while he babysat her and her siblings. The victim's and her family's life was greatly affected by the misuse of the Defendant's position of trust within their family, and the victim continued to suffer after she reported the crimes when the Defendant attempted to intimidate her and was seen near her school. We agree with the trial court that this behavior does not indicate that a sentence of probation is appropriate. Accordingly, we conclude that the trial court did not abuse its discretion when it ordered the Defendant to serve his sentence in confinement. The Defendant is not entitled to relief.

### III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE